UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LEE BALDWIN,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>WILLIAM MUNIZ, Warden,<br><br>　　　　　Respondent. | Case No. 14-cv-03271-JST (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

　　　　Before the Court is the above-titled *pro se* petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Anthony Lee Baldwin, challenging the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition.[1] Petitioner has filed a traverse. For the reasons set forth below, the petition is denied.

## I. PROCEDURAL HISTORY

　　　　On June 12, 2012, a Del Norte County jury found petitioner guilty of second degree robbery, petty theft with a prior conviction, and brandishing a knife. CT 66-68.[2] On August 2, 2012, the trial court sentenced petitioner to nine years in state prison. CT 169.

　　　　On November 9, 2013, the California Court of Appeal affirmed the judgment on appeal in

---

[1] Petitioner initially named Clark Ducart, warden of Pelican Bay State Prison, as the respondent in this action. The California Department of Corrections and Rehabilitation's online inmate locator service confirms that petitioner has been transferred to Salinas Valley State Prison ("SVSP"). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, William Muniz, the current warden of SVSP, is hereby SUBSTITUTED as respondent in place of petitioner's prior custodian. Petitioner is reminded that he must keep the Court and all parties informed of any change of address.

[2] All references herein to exhibits are to the exhibits submitted by respondent in support of the answer, unless otherwise indicated. References to "CT" and "RT" are to the Clerk's Transcript and Reporter's Transcript of the state proceedings, Exs. 1 and 2, respectively.

an unpublished decision. *People v. Baldwin*, No. A136164, 2013 WL 6072209 (Cal. Ct. App. Nov. 19, 2013). Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal which was summarily denied on November 19, 2013. Ex. 12. Petitioner also filed a petition for writ of habeas corpus in the California Supreme Court, which was summarily denied on June 11, 2014. Ex. 14. Petitioner timely filed the instant federal petition on July 21, 2014.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The California Court of Appeal, in its November 19, 2013 decision affirming the judgment, summarized the background relevant to the instant proceedings as follows:

> On March 15, 2012, a man later identified as appellant Baldwin attempted to leave a Walmart store wearing a pair of shoes for which he had not paid. Leticia Rosales, the store's assistant manager, followed Baldwin, and when she asked him to stop, he turned around with a box cutter in his hand. He moved forward until he was three to four feet from Rosales and told her, "I'll f- - -ing cut you, bitch." Rosales retreated, and Baldwin ran to his car. When she went out into the parking lot to get the car's license number, Baldwin revved the engine and sped up toward her. The car came within one foot of Rosales before turning and speeding away. Baldwin was arrested some two weeks after the incident.
>
> An information filed April 17, 2012, charged Baldwin with the following three counts: second degree robbery, petty theft with a prior theft conviction, and brandishing a knife.
>
> ### *Plea Negotiations and First Marsden Motion*[3]
>
> Prior to trial, Baldwin twice requested hearings under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). At the first *Marsden* hearing, in addition to complaining about trial counsel's performance, Baldwin claimed defense counsel had offered to the prosecution a plea for "grand theft of person with a bunch of years," even though he had told counsel he was unwilling to take a deal that involved second degree robbery and was only willing to do some prison time for petty theft with a prior conviction. Defense counsel explained the prosecution's offer required Baldwin to plead to second degree robbery because of its effect as a serious or violent felony under California's three-strikes law. When his client rejected the offer, defense counsel proceeded with the preliminary hearing the next day. Counsel represented to the court that he had communicated with the district attorney about appellant's unwillingness to plead to a strike offense and the unlikelihood of settlement absent a concession from the prosecution on this point.
>
> Baldwin and his trial counsel agreed counsel would explore settlements while Baldwin maintained a "rigid posture" to pressure the prosecution to offer a better deal. Defense

---

[3] Under California law, when a defendant requests substitution of court-appointed counsel, the trial court has a duty to listen to his or her specific reasons for the request. *People v. Marsden*, 2 Cal. 3d 118, 123-25 (1970). This in short-hand is known as a "*Marsden* motion" or a request for a "*Marsden* hearing." *See Schell v. Witek*, 218 F.3d 1017, 1021 (9th Cir. 2000).

counsel acknowledged he had told the district attorney, "[appellant] can do time standing on his head," but explained the comment's purpose was to dissuade the prosecution from attempting to settle the case by threatening to "pile on the time." He also acknowledged he had asked the prosecution whether it would settle the case for a plea on the grand theft and brandishing charges, believing that it might help his client avoid a strike offense, but that he did not present it as an "offer." Defense counsel claimed that presenting this idea early on would plant a seed for a future favorable offer.

The trial court denied Baldwin's first Marsden motion.

*Further Plea Negotiations and the Second Marsden Motion*

Five days before trial, defense counsel advised the court Baldwin was willing to enter a guilty plea in exchange for a stipulated term of two years, but the prosecution's previous offers had "been in the range of five to six years." After defense counsel noted his client was facing 10 or 11 years if his prior offenses were provable, the prosecutor told the court the parties were too far apart to reach agreement. As the prosecutor put it, "There's no way we would consider coming anywhere near two years[.]" The court allowed the parties two days to negotiate a resolution and warned Baldwin it would not consider plea or sentence bargaining on the day of trial. The trial judge stated, "The only thing I would accept on the day of trial is a plea to the sheet, which he has a huge exposure."

The business day before trial, Baldwin requested another *Marsden* hearing, where he complained about perceived inadequacies in defense counsel's investigation of witnesses. When the court asked Baldwin why he had not raised his complaints earlier, Baldwin responded, "I didn't think we were going to go to trial. I thought we were going to plead out[.]" The court denied the *Marsden* motion.

Later that same day, the court warned Baldwin, "I will not accept anything other than a straight up plea on—after today." The court then asked appellant directly whether he wanted to discuss a negotiated resolution. Baldwin responded that he would "take the petty theft or grand theft," although his counsel explained Baldwin had not been willing to agree to a term of more than two years. Defense counsel stated Baldwin was facing an 11–year maximum sentence, and the prosecutor made clear the People's best offer would be seven years of prison time with two priors.

The trial court commented that there was no more it could do to help the parties' negotiations. Defense counsel made some suggestions, such as having Baldwin plead to the charges and leave sentencing to the court's discretion, persuading the prosecution to agree to a sentence "lid" when referring the matter to probation, or proceeding by way of a court trial. Noting that a lot of options were on the table, the court adjourned the matter to give defense counsel a few hours to confer with his client. But when court reconvened at the end of the day, Baldwin did not appear. The court expressed its intention to go forward with trial on the next business day.

*Baldwin's Counsel Declines to Request a Continuance*

After completion of voir dire, the court received a note from a juror stating that Baldwin was "nodding off from time to time." The court excused the jury and asked appellant

3

whether he was having a hard time staying awake. Baldwin said he hadn't gotten much sleep, and the court advised him to drink some coffee during the break, while defense counsel suggested he get some fresh air.

[Later d]uring the examination of Rosales, the prosecutor interrupted to ask the court whether Baldwin was okay. Defense counsel conferred with his client, and the court announced it would take the afternoon break. Once the jurors left, the court said it had noticed Baldwin "sleeping on and off" during the prosecution's direct and defense counsel's cross-examination. To "make a record on that issue," defense counsel stated to the court that earlier, in chambers, with all attorneys, appellant, and the court present, defense counsel had explained that he did not believe "the fact that [his] client is sleepy would constitute good cause to ask to continue the matter," and therefore he had not requested a continuance. The trial judge responded that, although he had not watched appellant constantly, he did not see him sleeping at all during the second half of the morning, but did see appellant sleep during the first half of the morning and quite a bit that afternoon. The court ended the inquiry there, and the proceedings resumed after the break.

*Request to Change Plea*

In the middle of trial, after one witness had taken the stand, Baldwin attempted to change his plea to guilty. The court stated it would "allow [Baldwin] to enter an open plea to all three counts." After appellant conferred with his counsel in court, counsel announced, "I'm sorry, your Honor. We shall proceed." The court then resumed the trial.

*Conviction, Sentence, and Appeal*

On June 12, 2012, the jury convicted Baldwin on all counts. On August 2, 2012, the court sentenced Baldwin to nine years in prison.

*People v. Baldwin*, 2013 WL 6072209, at *1-3.

### III. DISCUSSION

**A.     Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). The final state court decision from the California Supreme Court summarily denied petitioner's state habeas petition. The California Court of Appeal, in its opinion on direct review, was the only state court decision that addressed the two claims petitioner raises

5

in the instant petition. The state court of appeal thus was the highest state court to have reviewed the claims in a reasoned decision, and thus it is the state court of appeal's decision that this Court reviews herein.

**B.     Petitioner's Claims**

Petitioner asserts that his trial counsel rendered ineffective assistance by: (1) failing to properly communicate the evidence against petitioner and the benefits of a plea bargain; and (2) failing to request a continuance when petitioner nodded off during trial.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id*. at 687-88, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). It is unnecessary for a federal court considering an ineffective assistance of counsel claim on habeas review to address the prejudice prong, i.e., the second factor of the *Strickland* test, if the petitioner cannot establish incompetence, as required under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential, and

when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation marks omitted). "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Court next addresses each ineffective assistance of counsel claim.

### 1.     Failure to Communicate

Petitioner claims that defense counsel rendered ineffective assistance by failing to adequately communicate the strength of the evidence against him and the benefits of a plea bargain. Dkt. No. 1 at 9-12.[4] Petitioner contends that if he had been properly informed of the risks of going to trial, he "would have accepted the prosecution's original offer to plea to second-degree burglary with a 6-year sentence." *Id.* at 11.

The California Court of Appeal rejected this claim as follows:

> Even if we assume the performance of Baldwin's counsel fell below an objective standard of reasonableness under prevailing professional norms, his claim of ineffective assistance must fail because he has not demonstrated prejudice. (See *Alvernaz*, *supra*, 2 Cal.4th at pp. 936–937.) Baldwin's opening brief devotes only one paragraph to analyzing the issue of prejudice under the facts of this case. He simply recites the fact that the plea offer of five to six years was less severe than his ultimate sentence of nine years, and he claims his trial counsel failed properly to advise him about the weaknesses of his case and its probable outcome. He makes no explicit claim that he would have accepted the plea offer, and even if this is implicit in [h]is argument, his opening brief points to no facts to support the claim. His bare, unsupported assertion "is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence." (See *Alvernaz*, *supra*, 2 Cal.4th at p. 938.) Baldwin offers no such corroboration.
>
> Nor does our independent examination of the record support an inference that Baldwin would have accepted the proffered plea bargain. Baldwin repeatedly expressed his unwillingness to agree to a strike offense. He does not tell us what his counsel could have said to persuade him to accept the plea bargain, given that defense counsel had already explained to him the strength of the prosecution's case, including the fact that there was surveillance footage of Baldwin "brandishing a box knife in front of a store employee[.]" Indeed, at the first *Marsden* hearing, defense counsel expressed his view that based on the evidence available, there was a substantial probability the jury would find Baldwin guilty. And contrary to Baldwin's claims, defense counsel stated on the record (and in his client's

---

[4] The page numbers associated with petitioner's filings refer to those affixed to the top of the page by the court's electronic filing program.

7

>presence) that Baldwin faced a maximum term of 11 years in prison if convicted.
>
>The trial court itself told Baldwin it was not realistic for him to expect a sentence of only "a couple years in prison." In response, Baldwin said, "Oh, no. I know that." The court also twice warned Baldwin it would not consider plea or sentence bargaining on the day of trial. Despite these warnings, Baldwin informed the court, on the last business day before trial, that he would only "take the petty theft or grand theft," and defense counsel confirmed his client had never expressed interest in a plea agreement that involved more than two years of imprisonment. At that point, the prosecutor was adamant that the People would not accept any plea agreement involving only six years' imprisonment, because he thought it was "light" and "almost a gift" given the seriousness of the offense. The minimum term of imprisonment the prosecutor would accept was seven years. Baldwin's counsel urged him to offer the People a five-year term "to narrow the gap." Baldwin made no such offer, and the court recessed after the discussion of a possible negotiated resolution. When it reconvened, Baldwin did not return.
>
>The record before us shows Baldwin was unwilling to negotiate on the final day for plea bargaining. Although he was clearly informed the court would entertain no more plea bargaining after that date, Baldwin made no effort to engage in further negotiations and simply did not return to court. Baldwin has therefore failed to demonstrate he was prejudiced, because there is no basis for concluding he would have accepted the proffered plea bargain. (*Alvernaz*, *supra*, 2 Cal.4th at p. 937; accord, *Lafler*, *supra*, 132 S.Ct. at p. 1385.) Moreover, Baldwin's opening brief makes no effort to show either that the prosecution would not have withdrawn the offer under the circumstances of the case, or that the trial court would have accepted the plea bargain. Baldwin says nothing about these crucial elements of the prejudice analysis. (See *Lafler*, *supra*, 132 S.Ct. at p. 1385 ["defendant must show ... that ... the prosecution would not have withdrawn [the plea] in light of intervening circumstances ... [and] that the court would have accepted its terms"]; *Alvernaz*, *supra*, 2 Cal.4th at p. 937 [to show prejudice defendant "must prove ... the proffered plea bargain ... would have been approved by the trial court"].)

*People v. Baldwin*, 2013 WL 6072209, at *4-5 (footnote omitted).

To prove ineffective assistance of counsel at the plea bargaining stage, the analysis under *Strickland* is based on "counsel's judgment and perspective when the plea was negotiated, offered and entered," not on a post-adjudication assessment of the case. *Premo v. Moore*, 562 U.S. 115, 126 (2011). To prove prejudice under the second-prong of *Strickland* in the context of a rejected plea offer,

>a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012).

8

1    Applying these legal principles to the current claim, the state court's rejection of this claim
2    was not unreasonable. Petitioner claims that he would have accepted the prosecution's first
3    offer—six years—if defense counsel had properly advised him about the weaknesses of the case.
4    The record shows, however, that after defense counsel advised the trial court three days before
5    trial that the prosecution's offers had ranged from five to six years, RT 90, the court allowed the
6    parties two days to negotiate a resolution and warned petitioner that it would not consider plea or
7    sentence bargaining on the day of trial, RT 91. The business day before trial, the trial court warned
8    petitioner that it would not accept anything other than a "straight up plea on—after today." RT
9    109. Petitioner responded that he would "take the petty theft or grand theft," RT 113, for two
10   years, RT 116, despite defense counsel's acknowledgement in court that petitioner's maximum
11   exposure would be eleven years in prison. RT 90, 114. The prosecution responded that seven
12   years was its best offer and it would not consider any deal that removed the strike. RT 116-17.
13   Defense counsel suggested some plea and sentence possibilities, and the trial court adjourned the
14   matter to give defense counsel a few hours to confer with petitioner. RT 118-19. When the court
15   reconvened, petitioner did not return. RT 120-21.

16   The record also shows that counsel advised petitioner about the weaknesses of his case.
17   *See* Ex. 3 at 44-46 (defense counsel at first *Marsden* hearing summarized his meetings and review
18   of the case with petitioner); *id.* at 50 (defense counsel stated at first *Marsden* hearing that he
19   thought there was "sufficient evidence in this case that if it were presented to a jury which fairly
20   and impartially proceeded to consider the evidence, there [was] as substantial probability that the
21   jury would find [petitioner] guilty"); *see also* RT 116 (trial court warned petitioner, "[I]f you are
22   convicted, I don't think it's very realistic that you're going to end up with . . . a couple of years in
23   prison," and petitioner acknowledged, "Oh, no. I know that."). As the state court determined, it
24   was highly unlikely that petitioner would have accepted any plea bargain proffered by the
25   prosecution. Petitioner fails to explain what more defense counsel could have said, given all the
26   explanations he had already given about the weaknesses of petitioner's case, to change petitioner's
27   mind.

28   On this record, as the state court determined, petitioner fails to demonstrate that but for

1   defense counsel's alleged failure to adequately communicate the benefits of a plea bargain, he
2   would have accepted the prosecution's six-year plea offer, or its later offer of seven years, for a
3   guilty plea to robbery, a strike conviction.  In light of the fact that petitioner continuously insisted
4   on a two-year term that did not include pleading to a strike, it was not unreasonable for the state
5   appellate court to determine that petitioner suffered no prejudice from counsel's alleged error.
6   *Woodford v. Visciotti*, 537 U.S. 19, 26-27 (2003) (deferring to state court's conclusion that
7   defendant was not prejudiced by counsel's errors); *Sophanthavong v. Palmateer*, 378 F.3d 859,
8   867 (9th Cir. 2004) (state court factual findings about what counsel told defendant about plea
9   bargain and whether defendant would have gone to trial presumed correct; presumption of
10  correctness not rebutted where defendant relied on same evidence already presented to state court).
11          Accordingly, petitioner is not entitled to habeas relief on this claim.
12      **2.      Failure to Request Continuance**
13          Petitioner claims that defense counsel rendered ineffective assistance by failing to request a
14  continuance when petitioner nodded off during trial proceedings.  Dkt. No. 1 at 12-14.  He
15  represents that he hoped a continuance would "give him enough time to reach a plea bargain with
16  the prosecution." *Id.* at 14.  He further asserts that the failure to request a continuance denied him
17  his right to be present at trial, thus constituting structural error requiring per se reversal.  Dkt. No.
18  2 at 12.

The California Court of Appeal rejected this claim as follows:

> Baldwin also claims his trial counsel was ineffective in failing to request a continuance after Baldwin was observed sleeping during a portion of the proceedings.  Baldwin argues he was deprived of his constitutional right to be mentally present during a felony prosecution. Citing *People v. Berling* (1953) 115 Cal.App.2d 255, Baldwin asserts he "was not conscious for much of his felony trial, therefore he was not present as constitutionally mandated."  We conclude this assertion lacks factual support and further conclude Baldwin has failed to establish he was prejudiced by his counsel's alleged failure.
>
> Initially, we note that Baldwin was observed sleeping only twice during the proceedings. The first time was during parts of the jury voir dire, and the second was during parts of Rosales's examination.  As to Baldwin's sleeping during a portion of the voir dire proceedings, it is not reasonably probable that his failure to remain alert affected the ultimate outcome of his trial.  "Because the use of peremptory challenges is inherently subjective and intuitive, an appellate record will rarely disclose reversible incompetence in

[the jury selection] process." (*People v. Montiel* (1993) 5 Cal.4th 877, 911.)  Moreover, objections and peremptory challenges during the jury selection process generally involve tactical choices by counsel.  (See *People v. Anderson* (2001) 25 Cal.4th 543, 569–570.)  Baldwin directs us to nothing in the record indicating defense counsel's performance during voir dire fell below accepted professional norms.  He also makes no claim that the composition of the jury would have been different had he not been "nodding off" during voir dire, much less any claim that a difference in the makeup of the jury would have altered the verdict it reached.  Absent such a showing, Baldwin cannot establish prejudice.

Nor are we persuaded Baldwin was prejudiced by counsel's failure to request a continuance after appellant was seen sleeping during portions of Rosales's testimony.  At the end of Rosales's redirect examination, the trial court asked whether defense counsel had any further questions.  Counsel conferred with Baldwin and told the court he had "[n]othing further."  Perhaps more important, even after having the opportunity to review the entire trial record, Baldwin's appellate counsel does not suggest there were objections trial counsel failed to make or lines of questioning trial counsel left unexplored.

Baldwin argues the jurors may have had an unfavorable impression of him after seeing him sleep through parts of his trial.  He speculates they "likely assumed that Baldwin's act of sleeping reflected a lack of interest and arrogance."  Again, however, he directs us to nothing in the record that would support this claim, and his speculation is insufficient to prove prejudice. (*People v. Fairbank*, *supra*, 16 Cal.4th at p. 1241.)

Baldwin also claims his counsel's failure to request additional time deprived him of the opportunity to achieve a negotiated settlement.  For the reasons set forth in part II, *ante*, we reject this argument.  Furthermore, his claim that his attempt to change his plea during trial shows it is more than reasonably likely he would have waived trial and pleaded is flatly contradicted by the record.  When Baldwin asked to change his plea after examination of the first witness had begun, the trial court made clear it was willing to allow Baldwin "to enter an *open plea* to all three counts." (Italics added.)  But after the trial court indicated it was unwilling to allow Baldwin to remain free on bail, and the prosecutor informed the court "the People are adamant about requesting remand at this time," Baldwin changed his mind and decided not to change his plea.  Defense counsel later explained that the issue of Baldwin's custody status was the likely reason for his client's decision not to change his plea.

Lacking any evidence in the record that might establish prejudice, Baldwin would have us hold his claimed inability to be mentally present during trial amounts to structural error, making it reversible per se.  Of course, "there is no constitutional prohibition against the trial and conviction of a defendant who fails to pay attention in court—whether out of indifference, fear, confusion, boredom, or sleepiness—unless that defendant also cannot understand the nature of the proceedings against him or adequately assist counsel in conducting a defense." (*Watts v. Singletary* (11th Cir.1996) 87 F.3d 1282, 1287 [no doubt as to defendant's competency where defendant slept through 70 percent of his murder trial].)  Baldwin points to nothing in the record demonstrating he was unable either to understand the proceedings against him or to assist in conducting his defense.

The cases upon which Baldwin relies for his claim of structural error are entirely inapposite, for they involve circumstances in which the defendants were denied their right

11

> under the California Constitution to have the assistance of an interpreter throughout the proceedings. (*People v. Aguilar* (1984) 35 Cal.3d 785, 791 [defendant denied constitutional right to an interpreter where same interpreter was not available to assist defendant throughout proceedings]; *People v. Chavez* (1981) 124 Cal.App.3d 215, 227–228 [defendant denied constitutional right to interpreter where defense counsel required to serve as both lawyer and interpreter].) Neither of these cases involved a claim of ineffective assistance of counsel, and neither case considered the question of prejudice.
>
> Equally inapposite is *United States v. Gonzalez–Lopez* (2006) 548 U.S. 140. That case involved a defendant's right to be represented by the counsel of his choice. (See *id.* at p. 144.) The court specifically distinguished a defendant's right to choose counsel from a defendant's right to effective assistance of counsel. (*Id.* at pp. 146–147.) The latter right is not violated unless a defendant can establish prejudice. (*Id.* at p. 147 ["a violation of the Sixth Amendment right to effective representation is not 'complete' until the defendant is prejudiced"].) In contrast, "[w]here the right to be assisted by counsel of one's choice is wrongly denied, ... it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." (*Id.* at p. 148.) Here, Baldwin is claiming only ineffective assistance of counsel, and thus the holding of *United States v. Gonzales–Lopez* has no application.
>
> As was true of Baldwin's claim of ineffective assistance in the plea bargaining process, Baldwin's claim of ineffective assistance for failure to request a continuance fails because he has not demonstrated prejudice.

*People v. Baldwin*, 2013 WL 6072209, at *5-7 (footnote omitted).

It cannot be said that the state court's rejection of this claim was unreasonable. The state court found that petitioner was observed asleep only twice during the proceedings: first during parts of jury voir dire, and second during parts of Rosales's examination. A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). Petitioner points to no law, and the Court is not aware of any, holding that a criminal defendant is deprived of his right to be present at trial when he falls asleep during trial. *See Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996) ("[T]here is no constitutional prohibition against the trial and conviction of a defendant who fails to pay attention in court—whether out of indifference, fear, confusion, boredom, or sleepiness.") Thus, counsel's decision not to request a continuance and to instead

1    confer with petitioner about any subjects he may have missed was a reasonable tactical decision.

2    To the extent petitioner claims that he was incompetent to stand trial, the claim also fails.
3    Falling asleep during the trial is not dispositive of petitioner's competence. *See Watts*, 87 F.3d at
4    1287 (finding that defendant's sleeping through the majority of his murder trial was insufficient to
5    establish incompetency); *see also Williams v. Woodford*, 384 F.3d 567, 606 (9th Cir. 2004)
6    (petitioner's dazed or inattentive demeanor at trial did not create bona fide doubt about his
7    competency). Rather, to establish incompetency, petitioner must demonstrate he lacked the ability
8    "to consult with his lawyer with a reasonable degree of rational understanding" and lacked a
9    "rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509
10   U.S. 389, 396 (1993); *Douglas v. Woodford*, 316 F.3d 1079, 1094 (9th Cir. 2003). Petitioner fails
11   to make such a showing.

12   In any event, for the reasons given by the court of appeal, it is not reasonably likely that a
13   continuance and petitioner's alert participation at trial would have resulted in a more favorable
14   verdict. *See Richter*, 562 U.S. at 112 ("[t]he likelihood of a different result must be substantial,
15   not just conceivable"). Petitioner fails to identify any objections that counsel should have made or
16   topics that counsel neglected to cover. Petitioner thus fails to establish prejudice.

17   Finally, the state appellate court correctly determined that defense counsel's failure to ask
18   for a continuance based on petitioner's claimed inattention at trial did not constitute structural
19   error. The Supreme Court has never held that exclusion of a defendant from a critical stage of the
20   trial is a structural error. *Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005) (en banc). The
21   right to be present at all critical stages and to be represented by counsel, like most constitutional
22   rights, are subject to harmless error analysis "'unless the deprivation, by its very nature, cannot be
23   harmless.'" *Id.* (quoting *Rushen v. Spain*, 464 U.S. 114, 117 n.2 (1983) (per curiam)). As the
24   state court noted, *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), the case upon which
25   petitioner relies for his argument, is inapposite. The Court in *Gonzalez-Lopez* specifically
26   distinguished the right to select counsel from the right to effective representation, noting that the
27   former requires no showing of prejudice while the latter does as a built-in part of the well-settled
28   *Strickland* analysis. *Id.* at 147-48.

Accordingly, petitioner is not entitled to habeas relief on this claim.

## C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute Warden William Muniz on the docket as the respondent in this action. The Clerk is further directed to change petitioner's address to Anthony Lee Baldwin, #K-02500, Salinas Valley State Prison, P.O. Box 1050, Soledad, CA 93960-1050.

IT IS SO ORDERED.

Dated: January 8, 2016

JON S. TIGAR
United States District Judge